# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | | |
|---|---|---|
| ZACHARY UNGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 9:16-cv-01361-DCN |
| COLUMBIA PROPERTIES HILTON | ) | |
| HEAD, LLC, MARRIOTT | ) | **ORDER** |
| INTERNATIONAL, INC. AND | ) | |
| COLUMBIA SUSSEX MANAGEMENT, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter comes before the court on defendants Columbia Properties Hilton Head LLC, Marriott International Inc., and Columbia Sussex Management, LLC's ("defendants") motion for summary judgment. ECF No. 33. For the reasons set forth below, the court grants the motion for summary judgment.

## I.  BACKGROUND

On June 10th and 11th of 2014, plaintiff Zachary Unger ("Unger") was staying at the Hilton Head Marriott Resort and Spa (the "Resort") when he was assaulted. The Resort is operated and managed by defendants Marriott International, Inc. and Columbia Properties Hilton Head, LLC. Marriott International is the owner and operator of the Resort. On June 10, 2014, Unger was assaulted by third-party individuals while he was on the Resort's premises. As a result of this assault, Unger suffered injuries including a nasal fracture, sprained foot, abrasions, contusions, and broken teeth. He has sustained medical bills from the medical care and treatment he sought out after the assault, and he

1

has also suffered depression and other emotional and psychological consequences of the assault.

Unger now brings a premises liability cause of action against defendants based on their alleged failure to provide adequate security, adequate lighting, adequate surveillance, and adequate personnel, as well as failing to properly warn Unger. Unger asks for actual and punitive damages. Defendants filed the present motion for summary judgment on June 13, 2017, to which Unger responded on July 7, 2017. Defendants replied on July 14, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II.  STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, 'after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., 105 F.3d 188, 190 (4th Cir. 1997) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Any reasonable inferences are to be drawn in favor of the nonmoving party. See Webster v. U.S. Dep't of Agric., 685 F.3d 411, 421 (4th Cir. 2012). However, to defeat summary judgment, the nonmoving party must identify an error of law or a genuine issue of disputed material fact. See Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); see also Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003).

Although the court must draw all justifiable inferences in favor of the nonmoving party, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence. See Anderson , 477 U.S. at 252; Stone, 105 F.3d at 191. Rather, "a party opposing a properly supported motion for summary judgment . . . must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e) (2002) (amended 2010)). If the adverse party fails to provide evidence establishing that the factfinder could reasonably decide in his favor, then summary judgment shall be entered "regardless of '[a]ny proof or evidentiary requirements imposed by the substantive law.'" Id. (quoting Anderson, 477 U.S. at 248).

### III. DISCUSSION

Defendants argue that summary judgment should be granted because (1) Unger has failed to present any evidence that defendants knew or should have known of third-party criminal activity occurring at the Resort that would provide "notice of a foreseeable risk of physical harm" to Unger; and (2) Unger cannot show that defendants failed to employ reasonable security measures in light of any foreseeable risk of physical harm to Unger. ECF No. 33 at 2. Both of these arguments center around the premise that because defendants had no knowledge of any risk to Unger of the criminal acts of third parties, Unger's premises liability claims fail.

A review of Unger's deposition testimony is helpful to determine the course of events leading up to the assault, and where they took place. Unger was walking on the public beach, outside the confines of the Resort, when he was approached by two individuals. The individuals approached Unger on the beach after he had taken "a few

steps," and asked him if he had money, saying that they had access to parties. ECF No. 33-2, Unger Deposition 46:25–47:18. Unger then walked "on the stairs and like up on the deck" of the Resort when he was assaulted by the individuals. Specifically, when Unger was on the deck of the Resort the male individual "hit [him] with a few clear blows" while the female "was jumping" on his back. Id. at 48:1–9. At this point, Unger fell down the stairs of the Resort and the assault continued on the public beach. Id. at 48:10– 18 ("[T]he next thing you know I'm on the beach . . . I kept trying to get on my feet and go back towards the stairs.").

It is undisputed that the assault began when Unger was on the deck of the Resort, although during the course of the assault he was pulled away from the Resort and onto the public beach. It is also undisputed that Unger was a business invitee of the Resort at the time of the assault—he was not scheduled to check out of the Resort until the following day. Therefore, the central question is whether the Resort had a duty to protect Unger as a guest from an assault that occurred on its premises.

The controlling case on an innkeeper's duty of care to a business invitee is Bass v. Gopal, 716 S.E.2d 910 (S.C. 2011), in which the South Carolina Supreme Court adopted a balancing test to determine whether a business owner has a duty to protect its invitees from the criminal acts of third parties. Under Bass, courts must determine (1) if the crime was foreseeable, and (2) given the foreseeability of the crime, the economically feasible security measures required to prevent such harm. Id. at 915. Bass held that "a business owner has a duty to take reasonable action to protect its invitees against the foreseeable risk of physical harm." Id. at 913.

In Moise v. Alliedbarton Sec. Servs., LLC, 2016 WL 319971, at *2 (D.S.C. Jan. 27, 2016), the court found that the plaintiff had satisfied the first prong of the balancing test set forth in Bass by presenting evidence "that the prior incidents in the area include[d] over a dozen assault calls and two strong arm robbery reports at the mall premises" and an expert that testified that the location of the attack provided the perpetrator with "an ideal environment in which to commit a crime." Here, there is no evidence from which the court can determine the foreseeability of the assault. Instead, Unger contends baldly that "[i]t is undisputed that there was no lighting and no security personnel present at the time of the assault upon Plaintiff. Indeed, there is no evidence that any security measures at all were in place." ECF No. 38 at 6. But Unger cites no evidence such as testimony from employees of the Resort or materials in support of this contention. Indeed, defendants dispute Unger's assertion that there was "no lighting" in place, arguing that while Hilton's Head ordinances, which prohibits artificial light from illuminating "any area of the beaches of Hilton Head Island," may have prohibited the lighting of the public beach on which Unger was walking when he was approached by the individuals, the Resort itself—including the deck and the stairs where the assault began—had lighting. ECF No. 33-3, Hilton Head Lighting Ordinance; ECF No. 39 at 3.

While the presence or absence of prior criminal incidents is not a determinative factor in assessing foreseeability, it is a "significant" one. Bass v. Gopal, 716 S.E.2d at 915. Unger has presented no evidence such as prior incident reports for the Resort that would demonstrate, for example, a pattern of police responding to calls at the Resort for various problems. Since Unger has presented no evidence related to the foreseeability of

5

the assault, the court has no information by which to determine if the assault was foreseeable. The first prong of Bass is not satisfied.

Next, defendants contend that even if they had knowledge or notice of a foreseeable risk of harm, Unger has failed to provide an expert opinion that the security measures were unreasonable. This, defendants contend, is fatal to Unger's claim because the court has no other way to assess what "economically feasible security measures" were required to prevent the assault. Unger noticed an expert in the field of security to testify regarding the defendants' "lack of security." ECF No. 33-5, Unger Answer. However, a review of the docket reveals that while the deadline for expert disclosure has passed, no expert has filed a Rule 26 report. Certainly, under Bass the reasonableness of a business owner's security measures "will, at many times" be identified by an expert. Bass, 716 S.E.2d at 917. For example, in Lord v. D&J Enterprises, Inc., 757 S.E.2d 695, 701 (S.C. 2014), the court held that an expert's testimony that an armed robbery attempt "most probably would not have occurred" if the business had placed a security guard at the entrance fulfilled the second prong of the Bass balancing test. But, contrary to defendants' assertion, Bass does not "clearly require[e] the introduction of expert testimony" for this case to survive summary judgment. Of course, Unger has presented no evidence from which a jury could infer that the Resort could have taken additional steps such as installing security cameras or security guards at the Resort deck that would have prevented the assault. This fails to meet the second prong of the Bass balancing test.

Bass sets forth a two-prong balancing test. Unger has presented no evidence for either of these prongs—the foreseeability of the assault or the

6

prevention of the attack and economically feasible measures. Therefore, the court grants defendants' summary judgment motion.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** the motion for summary judgment.

**AND IT IS SO ORDERED**.

                                  **DAVID C. NORTON**
                                  **UNITED STATES DISTRICT JUDGE**

**December 19, 2017**
**Charleston, South Carolina**